*Decision will be entered under Rule 50.*

THE FIRESTONE TIRE & RUBBER COMPANY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 111707. Promulgated September 30, 1943.

*T. F. Doyle*, for the petitioner.
*W. W. Kerr, Esq.*, for the respondent.

STERNHAGEN, *Judge:* The Commissioner determined a deficiency of $14,698.31 in petitioner's income tax for the fiscal year ending October 31, 1939. Admitting $1,399.41 of the deficiency to be correct, petitioner contests the remainder, which results from a determination of the basis for computing gain or loss in an exchange. The facts are stipulated and are found as stipulated.

The petitioner is an Ohio corporation and filed its income tax return for 1939 on an accrual basis in the eighteenth district of Ohio.

In 1929, at divers times, it purchased in the aggregate 15,384 of its own common shares in the open market for $590,781.96 cash, and held them as treasury shares. They were recorded on taxpayer's books in a separate account designated "Treasury Stock—Common" at par value of $10 per share after a charge to surplus of $436,941.96.

On May 14, 1937, taxpayer, to obtain control of the Schacht Rubber Manufacturing Co., agreed with the three shareholders of that corporation to acquire from them all the Schacht outstanding shares, consisting of 600 common, in exchange for 15,384 shares of Firestone common. The 15,384 treasury shares which had been purchased as aforesaid were exchanged, 8,840 on May 14, 1937, for 300 Schacht and 6,544 on April 29, 1939, for 300 Schacht.

On this exchange no gain or loss was recognized, since the exchange was in a nontaxable reorganization, section 112 (g) (1) (B), Revenue Act of 1936. The quoted market price of Firestone common was $34 on May 14, 1937, and $20 on April 29, 1939. The cost of the Schacht shares in the hands of the shareholders from whom taxpayer acquired them was $100 per share, or $60,000 for the 600 shares acquired.

In July 1939 taxpayer decided it no longer wanted control of the Schacht Co., and on July 15, 1939, by agreement with the former Schacht shareholders, taxpayer exchanged 306 Schacht (51%) for 7,844 Firestone common. It recorded the latter as treasury stock at a value of $204,424.01 and then wrote them down to $10 per share by a charge to surplus of $125,984.01. On July 15, 1939, the fair market value of Firestone common was $21.25 per share, or $166,685 for 7,844 shares.

We are to determine the tax effect of petitioner's July 1939 exchange of 306 Schacht shares for 7,844 Firestone shares. This exchange was not a reorganization exchange or otherwise tax-free, and gain or loss is recognizable for tax purposes. The question upon which the parties are at odds is the question of what basis is properly to be used in the computation. In determining the deficiency the Commissioner used a basis of $30,600, the transferors' cost of $100 per share, and

cited section 113 (a) (7). The petitioner demands the use, as basis, of the cost ($301,298.80) of the Firestone treasury shares given up $\frac{7844}{15384}$ ( x $590,781.96), and cites section 113 (a) (6).

The Schacht shares given up in the July exchange, as we have said, had been acquired by petitioner in a reorganization, namely, 15,384 Firestone treasury shares for 600 (all) Schacht shares, sec. 112 (g) (1) (B).

Section 113 prescribes the basis to be used in various situations in computing gain or loss; and subdivision (a) (7), which is the one used and relied upon by the Commissioner, prescribes that, if the property exchanged (306 Schacht) has been acquired by the taxpayer in connection with a reorganization, the basis is the same as in the hands of the transferor, BUT not when the property thus acquired consisted of stock or securities in a corporation party to the reorganization (as this was) ; however, this exception does not apply to an exchange in which the stock or securities received were acquired "by the *issuance* of stock or securities of the transferee as the consideration * * * for the transfer." The effect of this zigzag provision is that the basis of shares acquired in a reorganization exchange for the "issuance" of shares of the taxpayer is the same as the transferor's basis of the shares received. This is what the Commissioner has used and the taxpayer challenges. The taxpayer says that the giving up of the Firestone shares in the earlier exchange was not an "issuance," since the F shares were treasury shares which had been bought for cash in the open market; and therefore that the last clause of the subdivision is not in point. If this is correct, it results that, since the Schacht shares acquired consisted of reorganization shares, the transferor's basis otherwise prescribed by the subdivision is not applicable.

The question at the end of this devious course is whether, for the purpose of ascertaining the proper basis of the Schacht shares traded in July 1939 for Firestone shares, the Firestone treasury shares which had been traded in the earlier exchange were "issued," or, rather, whether in the earlier exchange the Schacht shares were acquired by the "issuance" of Firestone shares. If this were merely a question of words, one would probably be inclined to say that such use by a corporation of its own shares bought in the open market with no defined purpose or plan of recapitalization and held for several years in the treasury is not an issuance of shares. Ordinarily an issuance of shares is not a tax-affecting transaction, while a sale or disposition of treasury shares is, having a basis as other property; this is under a rule that, when a corporation deals in its own shares as it might in the shares of another, gain or loss is recognized, irrespective of the analytical effect on its capital structure of the temporary holding

of treasury shares which had already been issued, unless the "real nature of the transaction" is a capital readjustment. *Helvering* v. *Reynolds Tobacco Co.*, 306 U. S. 110, *Brown Shoe Co.* v. *Commissioner*, 133 Fed. (2d) 582; *Helvering* v. *Edison Bros. Stores*, 133 Fed. (2d) 575; *Allen* v. *National Manufacture & Stores Corporation*, 125 Fed. (2d) 239; *Cohen Trust* v. *Commissioner*, 121 Fed. (2d) 689; *Commissioner* v. *Woods Machine Co.*, 57 Fed. (2d) 635. But, for the purpose of an inquiry as to basis, there is a difference between an issuance of shares and a disposition of treasury shares, in that the former do not have a cost and the latter do. This difference is enough to provide some explanation why in the statute the exception is made of an exchange involving an issuance of shares. It suggests that the meaning of issuance is a noncost issuance and does not include a use of treasury shares having a cost. For it is hard to imagine why, if a cash sale of shares or securities purchased in the open market involves gain or loss on the basis of the actual cost to the corporation, the basis resulting from the disposition of similar shares or securities in a tax-free exchange should be, not the projected actual cost, but the basis of the transferor of the property received by the exchanging corporation.

We are of opinion that the Commissioner's determination requiring the use of the transferors' cost as petitioner's basis is erroneous. The correct basis is that used by the petitioner resulting from the application of subdivision 113 (a) (6), namely, the pro rata (7844/15384) portion of the petitioner's original purchase cost ($590,781.96) or $301,298.80.

The determination of deficiency is reversed upon the item in issue. Other adjustments are not assailed by the petitioner.

Reviewed by the Court.

*Decision will be entered under Rule 50.*

SMITH, *J.*, concurs only in the result.

ARNOLD, *J.*, dissents.

___

TURNER, *J.*, dissenting: I find myself unable to agree with the conclusion expressed in the preceding opinion. There is no denying that the Schacht shares were acquired by the petitioner through the issuance of its own shares, and it is section 113 (a) (7), not section 113 (a) (6), that is applicable where the property, the basis for which is being sought, was acquired by a corporation in a reorganization, as this admittedly was, and through the issuance of its own shares. The tenor of the reasoning used seems to be that, since the issuance here was a reissuance, it was not an issuance within the meaning of the statute. Neither the statute, its legislative history, nor the regula-

tions, so far as I have been able to discover, offer any basis for the conclusion that Congress in using the word "issuance" in sections 113 (a) (6)[1] and 113 (a) (7)[2] was in any way limiting it to first or original issuances of stock only.

The reason for concluding that the term "issuance" is to be so limited in its application seems to be that since a definite sum was paid to the prior holders for the shares used in acquiring the Schacht stock the said shares had or retained a basis equal to the sum paid to the prior holders therefor. This reason in turn seems to be based on the proposition that the acquisition of the shares, the holding of them in the treasury, and their later issuance were all a part of "a tax-affecting transaction" or a dealing by the petitioner "in its own shares as it might in the shares of another" and not a transaction the real nature of which was "capital readjustment." There is nothing in the record to indicate that the earlier acquistion by the petitioner of its said shares was not intended to be "a capital readjusting" transaction, and certainly there can be no denying that it was so in fact, and the fact that the shares were held as treasury stock and not retired on the books of the corporation would not, in my opinion, make it otherwise. They were not, and the majority opinion so indicates, bought or acquired with any defined purpose or plan for future use. Their only function was their availability for subsequent issuance in the event it should be found desirable to raise additional capital in that manner, and in that respect they were no different from similar shares previously authorized but never before issued. In such circumstances, it seems to me that effect must be given to the prior purchases of the said shares as "capital adjusting transactions," and I gravely doubt that it may be said that these shares, when later issued for the Schacht stock, had or retained a basis equal to the cost of acquiring them from their prior holders, such cost having previously

---

[1] SEC. 113. ADJUSTED BASIS FOR DETERMINING GAIN OR LOSS.

(a) BASIS (UNADJUSTED) OF PROPERTY.—The basis of property shall be the cost of such property ; except that—

 \*　　　　\*　　　　\*　　　　\*　　　　\*　　　　\*　　　　\*

(6) TAX-FREE EXCHANGES GENERALLY.—If the property was acquired, after February 28, 1913, upon an exchange described in section 112 (b) to (e), inclusive, the basis (except as provided in paragraph (15) of this subsection) shall be the same as in the case of the property exchanged, decreased in the amount of any money received by the taxpayer and increased in the amount of gain or decreased in the amount of loss to the taxpayer that was recognized upon such exchange under the law applicable to the year in which the exchange was made. \* \* \* *This paragraph shall not apply to property acquired by a corporation by the issuance of its stock or securities as the consideration in whole or in part for the transfer of the property to it.* [Italics supplied.]

[2] (7) TRANSFERS TO CORPORATION.—If the property was acquired after December 31, 1917, by a corporation in connection with a reorganization, then the basis shall be the same as it would be in the hands of the transferor, increased in the amount of gain or decreased in the amount of loss recognized to the transferor upon such transfer under the law applicable to the year in which the transfer was made. *This paragraph shall not apply if the property acquired consists of stock or securities in a corporation a party to the reorganization, unless acquired by the issuance of stock or securities of the transferee as the consideration in whole or in part for the transfer.* [Italics supplied.]

been absorbed in the adjusting of corporate capital. It is true that the Circuit Court of Appeals for the Fifth Circuit, in *Allen* v. *National Manufacture & Stores Corporation*, 125 Fed. (2d) 239, and the Circuit Court of Appeals for the Third Circuit, in *Cohen Trust* v. *Commissioner*, 125 Fed. (2d) 689, appear to have accepted the accounting practice of carrying treasury stock as assets on the corporate books as denoting substance therein, but in my opinion, and with all due respect to the courts, such a practice presents a picture which is artificial and tells a story that is wholly fictitious.

In any event, however, Congress has prescribed in section 113 (a) (7), *supra*, that the basis for property acquired by a corporation through the issuance of its own stock or securities in connection with a reorganization shall be the same as it would in the hands of the transferor. The Schacht stock was so acquired, and we must apply the statute as Congress has given it to us, for, though the reason for the form of the statute may not be readily apparent when applied to this type of case, or wise or unwise the course Congress has taken, the changing of the statute is the province of Congress, not ours. *White* v. *United States*, 305 U. S. 281.

MELLOTT and DISNEY, *JJ.*, agree with this dissent.