THE NIVISON-WEISKOPF COMPANY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 26564. Promulgated September 18, 1952.

*N. Barr Miller, Esq.*, for the petitioner.
*W. T. Holloran, Esq.*, for the respondent.

OPINION.

OPPER, *Judge:* This proceeding grows out of a partial denial of an application for relief from excess profits tax under section 722. Respondent's rejections of the claims for refund were in the respective amounts of $7,744.05 for 1942 and $5,796.24 for 1945. As to the latter year, respondent has now abandoned his contest, so that the only year remaining in controversy is 1942 and the only question to be decided

is whether respondent was correct in applying the ruling known as E. P. C. 29 to petitioner's claim and thereby reducing its constructive base period net income under section 722 from $50,834.72 to $12,493.48.

All of the facts have been stipulated. They are hereby found accordingly. Petitioner filed its income and excess profits tax returns with the collector for the first district of Ohio.

The essence of E. P. C. 29 (1948–1 C. B. 90)[1] is that where there is involved in a reconstruction of income under section 722 an actual loss at the end of the base period so that the taxpayer obtains the benefit of a net loss carry-over to an excess profits tax year, the constructive average base period net income otherwise applicable to that year will be reduced by one hundred ninety-fifths of the net loss carry-over.

Applying that concept with conceded fidelity, "respondent" in the words of the stipulation "in determining that petitioner's constructive average base period net income of $50,834.72 for the taxable year 1942 should be adjusted to $12,493.48, applied a ruling designated as E. P. C. 29. * * *." His computation was as follows:

| | | |
|---|---:|---:|
| Constructive average base period net income | | $50,834.72 |
| Net operating loss deduction | $36,424.18 | |
| 100/95 of $36,424.18 | | 38,341.24 |
| Constructive average base period income as adjusted | | $12,493.48 |

[1] "The E Corporation was organized and commenced business in January, 1939, and, therefore, is qualified for consideration under section 722 (b) (4). For the taxable year ended December 31, 1939, it sustained an operating loss giving rise to a net operating loss deduction applicable to 1940, its first excess profits tax taxable year. *Held*, that constructive average base period net income applicable to 1940 must be determined in a manner that will compensate for the effect of the net operating loss deduction on net income for 1940. An acceptable method is illustrated herein.

"1. The E. Corporation was organized and commenced business in January, 1939, and filed returns on the basis of the calendar year. For the year 1939 the corporation sustained a net operating loss which gave rise to a $19,000 net operating loss deduction for 1940. Its net income for 1940, computed without regard to the net operating loss deduction, was $100,000.

"2. The taxpayer filed application for relief under section 722 for 1940 and established that its constructive average base period net income applicable to 1940 would be $40,000 if the net operating loss deduction for 1940 properly could be ignored.

"3. If the amount of relief were computed without regard to the net operating loss deduction, duplication in tax benefits would arise. The operating loss would, in effect, be restored twice in the computation of the excess profits tax for the year 1940, first, by reducing the excess profits net income for 1940 and, second, by substituting net income for this loss in computing constructive base period net income to form part of the excess profits credit. Such double counting would be contrary to the terms of section 722 (a), which prescribes that the constructive average base period net income shall be a fair and just amount for the purpose of comparing normal earnings with earnings during an excess profits tax period.

"4. In the circumstances of this case, the constructive average base period net income for 1940 is obtained by reducing the amount which would be used in the absence of a net operating loss deduction by a sum equal to 100, ninety-fifths of the excess of the net operating loss deduction for 1940 over additional 1940 income tax that would have been payable had no such deduction been allowable. In short, the object of the adjustment is to subject to excess profits tax an amount of adjusted excess profits net income equal to the amount that would have been taxed had there been no net operating loss deduction. * * *"

Having ascertained that the tax would be less under the invested capital method, respondent denied relief for 1942 under section 722.

Petitioner's "constructive average base period net income" is thus determined to be $50,834.72, the figure for which petitioner contends. If this were doubtful, it would be confirmed by the fact that the same figure has been employed in granting relief for other years not here in controversy; that the parties have agreed that "in the event the Court should find that the application of E. P. C. 29 * * * is erroneous, the petitioner is entitled to the benefit of an unused excess profits credit carry-over, based on its constructive average base period net income determined under Section 722 * * *"; and by the reference in E. P. C. 29 to "the object of the adjustment" as being "to subject to excess profits tax an amount of adjusted excess profits net income equal to the amount that would have been taxed had there been no net operating loss deduction."

In attempting thus to neutralize the net loss carry-over we think the Council and respondent are in error. The two provisions are distinct, and there is no indication that special relief under section 722 was intended to be bought at the price of foregoing the net loss carry-over to which all eligible taxpayers are entitled. In fact, the concept of the "constructive" base period income as an "average" and the provision for its application as a credit in lieu of actual base period income for each excess profits tax year,[2] is at war with the hypothesis that it needs adjustment depending on the special circumstances of one year as against another. See *Clinton Carpet Co.*, 14 T. C. 581, 587. Since section 722 and the net loss provisions are in each case separately applicable, we see no problem of equity in applying both where both are appropriate. Cf. *Industrial Loan Society, Inc., (Md.),* 14 T. C. 487.

That the section 722 figure is a "constructive" or imaginary, and hence necessarily an unreal, amount, see *Fezandie & Sperrle, Inc.,* 5 T. C. 1185; *D. L. Auld Co.,* 17 T. C. 1199, 1208, renders it totally unnecessary to attempt, as the Council and respondent have done in E. P. C. 29, to reconcile actual losses and their statutory consequence with the "constructive average base period [plus] income" of section 722.

E. P. C. 29 is no more than a ruling. It has never been given the force of a regulation. Cf. *Helvering* v. *Reynolds Tobacco Co.,* 306 U. S. 110. We view it, and respondent's action here based upon it, as erroneous.

Reviewed by the Special Division.

*Decision will be entered under Rule 50.*

---

[2] " * * * the tax *shall be* determined by using *such* constructive average base period net income in lieu of the average base period net income otherwise determined under this subchapter * * *" Internal Revenue Code, section 722 (a). [Emphasis added.]